These are two damage suits resulting from the same automobile collision which took place in the intersection between Hodges and Division Streets in the City of Lake Charles at about 2:45 in the afternoon of December 6, 1939. They were consolidated for trial in the Court below, separate judgments rendered in favor of the plaintiff in each case and an appeal taken by the defendants in each. They were consolidated for argument on the appeal in this Court.
The suit of Lake Charles Stevedores, Inc., and Ætna Insurance Company is brought to recover the damage caused to the automobile that was being driven by Charles H. Austin, Sr., who is the plaintiff in the companion suit. The automobile was owned by Lake Charles Stevedores, Inc., and was insured by the Ætna Insurance Company, the policy containing the usual $50 deductible clause. The claim of the Ætna Insurance Company is for $629.10 and that of Lake Charles Stevedores, Inc., for the $50 loss sustained by it under the terms of the policy. The defendants are Mrs. Julia Streater, wife of George G. Streater, and George G. Streater himself, and the American Employers Insurance Company which carried the public liability insurance on the other automobile involved in the accident and which was being driven by Mrs. Streater.
The suit of Charles H. Austin, Sr., brought against these same defendants has for its purpose the recovery of damages for personal injuries in the sum of $14,688.30.
The allegations made in both petitions are substantially the same that are made in all damage suits involving intersectional collisions, especially in large towns and cities. It is conceded that neither of the two streets involved enjoyed a superior right by ordinance over the other but it is alleged that Hodges Street, on which the plaintiff car was travelling, is a more important street and carries considerably more traffic than Division Street on which the defendant car was proceeding. To that extent it is charged that Mrs. Streater, the driver of that car, didn't exercise due caution in approaching the intersection. She *Page 243 
is also charged with failing to keep a proper lookout, failing to apply her brakes and delay the progress of her car until the other, which had entered the intersection first, could pass; in entering the intersection after it had been pre-empted by the other car; in failing to swerve her car slightly to the left in order to pass behind the car and avoid striking it; in failing to do any act to avoid striking the other car which had cleared half of the intersection before she entered; in failing to apply her brakes after striking the other car, and in continuing her speed, thus pushing it sideways and crushing it against a telephone post at the northwestern corner of the intersection.
In the first suit the American Employers Insurance Company filed its answer separately from the other two defendants in which it may be said to deny practically all the allegations of the petition and specifically charges the driver of the plaintiff car with the gross negligence which, it is averred, was the sole and proximate cause of the collision. He is charged with driving into the intersection at an excessive speed; in not looking before entering to see if any car was approaching on Division Street; with failing to have seen the Streater car which had already occupied the intersection when he entered, and in failing to bring his car to a stop before colliding with the other. In the alternative that defendant pleads that if the Court should find any negligence on the part of the driver of the plaintiff car which did not constitute the sole cause of the accident, that it did constitute a contributory cause and his contributory negligence bars the recovery of all the plaintiffs.
The answer of the defendants George G. Streater and his wife may be said to constitute also a denial of all the material allegations of the petition charging Mrs. Streater with negligence and then, in assuming the position of plaintiffs in reconvention, they set out the same charges of negligence as are made in the answer of the American Employers Insurance Company for which they claim that the driver of the plaintiff car was solely responsible for the accident and for the resulting damages sustained by them and for which they ask to recover against the owner of the car, Lake Charles Stevedores, Inc., the sum of $15,000 for the personal injuries sustained by Mrs. Streater and the sum of $399.10 for expenses incurred by her husband in having her injuries attended to.
In the second suit which is that of Charles H. Austin, Sr., for damages for personal injuries sustained by him, the answer of the American Employers Insurance Company is practically the same as its answer in the first suit and so is that also of the defendants Mr. Mrs. Streater who again present a demand in reconvention for the same damages as set out by them in their other answer and who in addition make that same demand against Charles H. Austin, Sr., individually and as Vice President and General Manager of Lake Charles Stevedores, Inc., to whom the automobile belonged, and also against the Globe Indemnity Company, the public liability insurer of that car.
The cases were vigorously contested and after being submitted to the district judge, he rendered judgment in favor of the plaintiffs in each, the award in the first being for the amount claimed as there seemed to have been no dispute concerning the amount of damages to the plaintiff automobile and in the second, the award being in the sum of $4,443.92. The defendants have taken a suspensive appeal in each case.
The district judge wrote a lengthy written opinion for the record in which he analyzed the testimony according to his own conception of the facts as shown, and we might state at the very beginning that although we believe he was correct in holding Mrs. Streater guilty of negligence, we cannot agree with him that Mr. Austin was not equally as guilty, in which event of course none of the parties should recover anything.
Mr. Austin was driving the Buick coupe which belonged to Lake Charles Stevedores, Inc., north on Hodges Street and Mrs. Streater was driving the Buick sedan which belonged to her husband, and to the marital community between them, we presume, west, on Division Street. Each was alone in their respective cars and outside of a witness named Max F. Marsh who claims to have been seated in an automobile parked on Hodges Street 150 feet south of the intersection were the only eyewitnesses to the accident. The district judge in order to decide the case in the way he did necessarily had to accept Mr. Austin's version of how the accident happened over that of Mrs. Streater and also to discount in its entirety the testimony of *Page 244 
the witness Marsh. Why he did this we cannot very well understand unless for some reasons better known to himself he thought that Mr. Austin was a more substantial witness than Mrs. Streater and that the witness Marsh testified to matters about which he knew nothing at all.
It may be that in some respects the witness Marsh did testify to matters which he was relying more or less on his own memory, estimates and observations but to all appearances he was a thoroughly disinterested witness as he does not seem to be acquainted to any extent in Lake Charles, being a resident of Tulsa, Oklahoma. Besides that he gave his testimony by deposition and the district judge didn't have any more opportunity of observing his demeanor in the manner of testifying than do the judges of this court. Unless he falsified, there is no reason why he should not have observed the Austin car as it necessarily had to pass right next to him and why he should not have seen the Streater car at the moment it entered the intersection from Division Street. His testimony is positive, as far as he gives it, that the Streater car entered first. It may be that from his position, at an angle behind the Austin car, it was not possible for him to say exactly when that car entered the intersection or whether or not it may not have entered first. Conceding that he cannot be definite and exact on this point, however, his testimony leaves us with the impression that from his position he was able to observe that if neither entered ahead of the other, that they entered practically at the same moment and that neither obtained any advantage over the other in that respect so that either can be favored with the law on his or her side.
But we might very well discount the testimony of this witness, and, looking at the facts as produced from the testimony of the two drivers and that of another witness who was called by the plaintiffs, we still think that if either party was guilty of any more negligence than the other that it was the driver of the plaintiff car. The witness we refer to is J.H. McCollister who is Vice President of Dubord Auto, Inc., and whose place of business is about three quarters of a block east of the intersection where the collision occurred. He didn't see the accident but when he heard the noise of the collision he looked and the first thing he saw was a man falling out of one of the automobiles. He immediately went to the scene and after observing the situation generally, examined the pavement to see if there had been any skid marks left by either of the cars involved in the collision.
It is shown that there is a sewer manhole in the intersection which, according to Mr. McCollister, is about in the center of Hodges Street and 6 feet south of the center line of Division Street. That would put the manhole somewhere in the northwest corner of the southeastern corner of the intersection. He saw skid marks made by the rear wheels of the Austin car starting about 18 inches south of this manhole. His testimony in this connection is very significant because according to Mr. Austin's own testimony he applied his brakes at about the time the impact took place, and the skid marks referred to having been made by the application of his brakes, it is evident that the impact did not take place in the northeast corner of the intersection as plaintiffs so strenuously contend and as was held by the district judge. Moreover, it seems that these skid marks after running straight north for a distance of about 3 to 3 1/2 feet then veered towards the northwest, indicating, as is a fact, that that is the direction in which the Austin car headed after the impact and continued on until it crushed against the telephone pole standing at the northwest corner of the intersection. These physical facts, taken into consideration with Mr. Austin's own testimony, establish the point of the collision perhaps better than any other evidence found in the record unless it be what appears from Mrs. Streater's testimony that the left front fender of her car was just about over the manhole, which she says she usually uses as a guide in going into that intersection, when she saw the Austin car then about 3 feet away from hers.
But it is contended that even so, the negligence of Mrs. Streater appears because if that is where the collision took place she was driving her car on the south lane of travel in Division Street which she had no business doing and ran into the Austin car on that side of the street. It is true that Mrs. Streater's testimony is somewhat conflicting in certain instances and that probably it indicates some confusion on her part but her statement to the effect that her left front fender was near the manhole when Mr. Austin applied his brakes, would still place her car to some extent at least in the north lane of travel of Division Street. At any rate, it would *Page 245 
indicate most positively that she had travelled at least as great a distance into the intersection as had the Austin car at the time of the collision which would refute the contention of Mr. Austin that he had entered first and had thereby pre-empted the right of way over the intersection.
A comparison of the width of each street with the other at the intersection, with the location of the manhole in mind, bears this out. Division Street, which Mr. Austin had to cross, is 24 feet wide. The manhole is shown to be about 6 feet south of the center line of that street. Hodges Street which Mrs. Streater was proceeding across is 28 feet wide. When therefore Mr. Austin started to apply his brakes 18 inches south of the manhole because the collision was then imminent, he had travelled less than 5 feet in the intersection because a car necessarily travels a few feet before the brakes take effect. His car is said to measure about 17 feet from bumper to bumper. The impact was a bit to the rear of its center along the running board on its right side so, at that moment, the front end of his car had barely reached the center of the intersection. In the meantime Mrs. Streater's car would have had to travel 14 feet in order to reach the center of the intersection from the side on which she was entering. Making allowances for that portion of the Austin car which projected over the center line of Hodges Street and which would be about 4 or 5 feet as his car is about 6 feet wide and his left wheel was about 1 or 2 feet over the center of that street, it thus appears that Mrs. Streater had gone from 9 to 10 feet in the intersection or almost the same distance as had the Austin car. As both cars are shown to have been more in the center of their respective streets than in their respective right lane of travel where they should have been, we cannot understand how either driver can be held to have been more guilty of negligence than the other in that respect.
Neither do we think that the speed of either car can be said to be a determining factor on the issue of negligence. There are different estimates of speed testified to and each driver gave an idea as to how fast he or she was going as each approached and entered the intersection. We cannot conclude from the testimony on this question that either was going at a fast or what may be said to have been an excessive rate of speed. Mrs. Streater's statement to the effect that she "paused" and then shifted gears as she entered the intersection may or may not be correct but disregarding all that part of her testimony, it still does not appear that she was driving any faster than was Mr. Austin. It is urged in support of the contention that she must have been going at a rapid rate of speed that she struck the Austin car with such violence as to push it sideways across the street to the northwest corner of the intersection where it crashed into a telephone pole. In this connection it is to be observed that the skid marks made by the Austin car where they lead in a northwesterly direction are as straight and regular as they were from the point from which they began. This would seem to be important because if the Streater car had been travelling so fast and had such momentum after stopping as to cause the Austin car to be pushed sideways there would have been a widening or some irregularity in the shape of the skid marks from that point on.
Considerable stress is laid on the fact that the bumper of the Streater car was embedded in the rear end of the Austin car apparently with such force as to have bound the right rear wheel of that car after the fender had jammed against it. This, it is urged, is a physical fact which also indicates that Mrs. Streater ran into Mr. Austin's car with very great force and violence. On the other hand the testimony indicates that the bolts with which the bumper was fastened to the Streater car were sheered off and defendants therefore contend that this shows that the rear end of the Austin car became entangled with the bumper of the Streater car and pulled it off. There is some plausibility in either of these two contentions but the testimony also shows that the front end of the frame of the Streater car was bent slightly toward the right and that being so, it would seem to lend some force to the point that is made that the bumper was pulled off by the Austin car. We mention these facts to show that, in our opinion, if either of the two cars was going faster than the other that most probably it was the Austin car.
We revert now to the question of the right of way which either party may have had over the other. As already stated neither street had a superior right by virtue of the city ordinance of the City of Lake Charles. That being so, under the State Highway Regulatory Statute the right of way was in favor of Mrs. Streater *Page 246 
as she was approaching the intersection from Mr. Austin's right. Rule 11 (a), Title II, Section 3, Act 286 of 1938. It is urged that because of the greater amount of traffic which usually prevails on Hodges Street, Mrs. Streater should have presumed that there would be more difficulty for her to go across the intersection than for Mr. Austin. Whilst it does appear that Hodges Street is a much more used and travelled street than Division Street that is a fact which can have no bearing or effect on the force of the State law which establishes the right of way, and even so at the moment when this accident happened there does not seem to have been any more traffic on Hodges than there was on Division Street.
Mr. Austin's negligence appears in his lack of attention in entering the intersection. He says that he saw the Streater car some 30 or 35 feet away when he was about to enter but in view of the point where the impact took place in the street and of the respective speed of the two cars, it could not have been that far or else he would have cleared the intersection entirely before it would have reached it. He evidently misjudged the distance or otherwise he assumed too strongly that he was on a favored street while under the only law governing the situation Mrs. Streater had the right of way.
Mrs. Streater's negligence consisted of her failure to have seen the Austin car before she says she did. She gives no explanation whatever for having failed to see it until she was only 3 feet away from it at a time when they were both in the intersection. Her negligence of course stands as a bar to recovery on the reconventional demand presented by her and her husband.
Our consideration of the testimony in the cases leads to a different conclusion than that reached by the learned trial judge and necessarily to a reversal of the judgments in which he awarded damages to the plaintiffs. Under our appreciation of the facts as found, because of the negligence of the drivers of both cars, none of the parties litigant can recover.
For the reasons stated it is now ordered that the judgment appealed from in the case of Lake Charles Stevedores, Inc., et al. v. George G. Streater et al. be and the same is hereby reversed, annulled and set aside and it is further ordered that the suit of the plaintiffs therein as well as the reconventional demand of the defendants be both dismissed, each of the parties being cast with their respective share of the costs.