LOTTINGER, Judge.
This is a suit wherein the plaintiff seeks to recover the value of a brahma bull which he claims to have lost as a result of injuries inflicted by another brahma bull belonging to the defendant. It is alleged in the petition that on July 9, 1952, the defendant’s brahma bull. broke through a fence separating the properties of the parties and attacked plaintiff’s bull. It is further set forth that the bull suffered a fracture of the right hind leg as a result of the attack and that, on the advice of a veterinarian, the animal had to be destroyed. Damages alleged to have been sustained were itemized as follows:
“Cost of bull destroyed by defendant’s animal. $750.00
Cost of repairing and rebuilding fence destroyed by ■ defendant’s animal . 100.00
Fee of Dr. W. S. Hornsby for services rendered in treatment of animal injured by defendant’s bull.;. 15.00
Total damages. $865.00”
Trial was had on the merits in the court below and the defendant has now appealed to this court, from a judgment condemning him to pay the sum of $600 for the bull together with $67.50 for fence repairs and $15 for veterinarian’s services. The.plaintiff has answered the .appeal asking that *533 th.e amount be increased to $865 as originally prayed for.
The first contention advanced by the appellant before this court is that the. plaintiff failed to produce sufficient evidence to show that the injuries received by his bull were caused by the animal belonging to the defendant. The record reflects that there were no eyewitnesses to whatever took place and the testimony of the plaintiff (who was the first to reach the scene) is as follows:
“Q. Did your bull sustain an injury on or about July 9th? A. Yes, Sir.
“Q. How did that happen, if you know? A. Through a fight with Mr. Gallet’s bull.
. “Q. Was Mr. Gallet’s bull penned on your property? A. In the property, in the barnyard.
“Q. Did you witness the fight between Mr. Gallet’s bull and your bull, Mr. Daspit? A. The only thing, I got there; the bull was in the ditch. Mr. Gallet’s bull was right there hitting him.
“Q. What were the two bulls doing? A. One couldn’t move; the other one was standing over him and hooking him.”
On cross-examination the plaintiff gave the following testimony:
“Q. Mr. Daspit, on what dates was that you saw your bull in the ditch and Mr. Gallet’s bull standing by? A. July 9th;
“Q. What time, Sir? A. Approximately 6:30.
“Q. At 6:30 in the morning? A. Yes, Sir.
“Q. Now, in your petition you stated that it was 4:30 in the morning. Now, which is correct, 4:30 or 6:30? A. No, Sir. 6:30.
“Q. Now, when jmu first saw..the bull, that is the position that they were in at that time, is that correct? A. That is right.
“Q. That is when you first saw the bulls that morning? A. Yes, Sir.
“Q. You don’t know whether Mr. Gallet’s bull attacked your bull ór your bull attacked Mr. Gallet’s bull to start it off, I mean, of your owii knowledge? A. You mean on that previous occasion or when, on the occasion before? .
“Qr That morning. A. I wouldn’t say.
“Q. You couldn’t say, is that correct? A. Mine being in the condition it was in, I couldn’t tell you; he couldn’t move.
“Q. You didn’t see the start of the fight, is that right? A. That is right.”
The testimony of the plaintiff given on direct and cross-examination, quoted above is the only evidence to be found in the record which would tend tó show that the defendant’s bull attacked and caused injury to that of the plaintiff. Nor is there any physical evidence which would tend to prove such to be a fact. Indeed, the testimony of Dr. Hornsby, the veterinarian who examined the bull and who testified on behalf of the plaintiff, is that he only found a fracture and saw'no marks or injuries which would indicate that the animal had been in a' fight. The direct testimony of the doctor in this regard-is as follows:
“Q. Was there anything about the animal that would indicate to you the type of injury he, had? I-mean — let’s put it another way. Was. there anything on the animal which would indicate the animal had been in some kind of a fight with another animal or accident? A. Not that I remember.”
On cross-examination the doctor gave the following testimony.
“Q. Doctor, you said you didn’t recall seeing any markings.of any kind on the animal to indicate that he had *534 been in a fight, is that correct? A. That is correct.
“Q. The mere experience of one bull lying on the ground and another bull is horning it, would there be any markings on the bull on the ground? A. Well, yes, Sir, if he was horning it there should be.”
The trial judge rendered written reasons for judgment which contain very illuminating observations concerning LSA-C.C. Art. 2321 and the decisions of our appellate courts thereunder. We note, however, that he has failed to set forth his reasons for concluding that the defendant’s bull had actually caused the damage complained of. The record contains evidence to the effect that several times prior to July 9, 1952, the defendant’s animal had broken into plaintiff’s pasture and that on one occasion the two bulls had fought. The evidence also seems to show that on July 9, the defendant’s bull broke the fence and entered plaintiff’s premises.
Taking the record as a whole we are constrained to believe that there is a strong probability that defendant’s bull, after entering plaintiff’s pasture, engaged the latter’s bull in combat and defeated him, causing the broken leg which resulted in the animal’s death. Be that as it may, however, we do not believe that the record establishes this to be a fact with that degree of certainty required by law. Pertinent in this respect is the case of Buatt v. Petty, La.App., 15 So.2d 825, 826, in which the plaintiff sued for the death of his cow, allegedly caused by its eating nitrate of soda spilled by defendant’s employees. In denying the plaintiff’s demands, the court observed that:
“The probabilities are in favor of the contentions made by plaintiff, but probabilities alone are not sufficient. As has been many times stated, courts are bound by facts established by the evidence, not by percentage, speculation or likelihood.”
For similar holdings see Lowery v. Ashworth, La.App., 28 So.2d 774, Pinkney v. Cahn Inv. Co., La.App., 32 So.2d 345 and Morris v. Vining, La.App., 49 So.2d 458.
We have no doubt but that in all probability the plaintiff’s bull suffered a broken leg as a direct result of an attack by the defendant’s bull. In spite of the probabilities pointing in that direction, however, there exist possibilities that the broken leg could have been caused by any number of other means. That being the case, and the record failing to show by a preponderance of the evidence (as opposed to probabilities) that the broken leg was in fact caused by the actions of defendant’s bull, we have no alternative but to deny the plaintiff recovery.
For the reasons assigned the judgment appealed from is reversed and the plaintiff’s suit dismissed at his costs.
Judgment reversed.